358 So.2d 409 (1978)
STATE of Mississippi
v.
Clifford RUSSELL.
No. 50378.
Supreme Court of Mississippi.
May 10, 1978.
*410 A.F. Summer, Atty. Gen. by W.D. Coleman, Deputy Atty. Gen., Jackson, for appellant.
White & Morse, George E. Morse, Gulfport, for appellee.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Clifford Russell was indicted, tried and convicted in the Circuit Court of Harrison County on the charge of selling a security without having first taken proper action to secure an exemption or certificate of authority from the Secretary of State of Mississippi in violation of Mississippi Code Annotated Section 75-71-31 (1972) (felony). After return of the guilty verdict, appellant filed a motion for new trial, and, in the alternative, motion for judgment notwithstanding the verdict. The trial judge sustained the motion for judgment notwithstanding the verdict, which resulted in the acquittal of Russell, and the State of Mississippi appeals here.
The State contends that the court erred in sustaining the motion of the defendant, Clifford Russell, for judgment of acquittal notwithstanding the guilty verdict, and that the case should be reversed and remanded to the trial court for imposition of sentence. Appellee argues that the only statutory provision for the State to appeal is Mississippi Code Annotated Section 99-35-103(b) *411 (1972) which authorizes the State to appeal in a criminal case for decision of law questions only.
There is no factual dispute involved in the instant case. The evidence is uncontroverted that Clifford Russell was acting as a representative of Russell Finance Corporation in the sale of the security (a negotiable promissory note) referred to in the indictment. It is not challenged that the sale took place by Russell when no action had been taken to secure an exemption and was consummated at a time when no certificate of approval for the sale of such security had been issued by the Secretary of State of the State of Mississippi. The proof showed that Russell Finance and Clifford Russell were engaged in investment activity.

I.
Is it a violation of the provisions of Chapter 71 to sell or issue a negotiable promissory note without having first obtained a certificate of exemption from the Secretary of State?
The pertinent statutes applicable to the felony charge are Mississippi Code Annotated Section 75-71-31 (1972), which provides:
"It shall be unlawful for any investment company or dealer or representative thereof, either directly or indirectly, to sell or cause to be sold, or offer for sale, any stocks, bonds or other securities (except as expressly exempted herein and proper action has been taken to secure said exemption) unless and until said secretary of state has approved thereof and has issued his certificate in accordance with the provisions of this chapter, . ."
and Mississippi Code Annotated Section 75-71-51 (1972), which provides, in part:
"The provisions of this chapter shall not apply to any of the following classes of securities (exempt securities). Any issuer, investment company, or licensed Mississippi dealer may obtain a certificate of exemption, under the provisions set out above, upon the submission of an application, under oath, to the secretary of state. The request for a formal exemption may be submitted by the issuer, investment company, dealer, or its counsel, upon a form furnished by the secretary of state. The issuance of a formal certificate of exemption by the secretary of state shall be prima facie evidence that said securities are exempted from the qualifications and registration provisions of this chapter."
Subsection (8) describes as an exempt security "negotiable promissory notes or commercial paper."
In Section 75-71-31 "proper action" to secure the exemption is not defined. The State contends that this section refers to Section 75-71-51 which sets out the proper action to be taken, to-wit, submitting an application, under oath, to the Secretary of State for a certificate of exemption. Yet, Section 75-71-51 states that the provisions of the chapter shall not apply to any of the classes of securities enumerated therein, which include the promissory note such as the one here sold by appellant. The section further sets out that the issuer, investment company, or dealer may obtain a certificate of exemption and that the request for formal exemption may be submitted upon a form furnished by the Secretary of State. The first paragraph then concludes with the statement that the issuance of a formal certificate of exemption by the Secretary of State shall be prima facie evidence that the securities are exempted.
Chapter 71, which contains all sections of the Blue Sky Laws, authorizes the Secretary of State to adopt regulations for the enforcement of the act, and the rules and regulations promulgated by the Secretary of State specify that obtaining a certificate of exemption and the occupational certificate is a requirement under Section 75-71-51 for the sale of exempt securities. However, the authority to define crimes and provide the punishment therefor is vested exclusively in the Legislature, and it may not delegate that power expressly or by implication nor may an administrative agency enlarge the criminal liability of the statute. Howell v. State, 300 So.2d 774 *412 (Miss. 1974). Also, penal statutes are interpreted strictly against the State and are construed liberally in favor of an accused. Ratcliff v. State, 234 Miss. 724, 107 So.2d 728 (1958).
The apparent purpose of the Blue Sky Laws is to protect the public against fraud, but it is also clear that the Legislature did not intend to place an undue restriction on commercial business. As stated above, Section 75-71-31 did not define "proper action" in obtaining the exemption. The fact that appellee acquired or executed the negotiable promissory note may be sufficient to fulfill the intent of the Legislature that the exemption attached. On the other hand, the intent of the Legislature could be expressed to mean that, if a person negotiating the security failed to obtain a certificate of exemption, the burden of proving it exempt rested upon him. The intent of the Legislature could be further expressed that, by obtaining a formal certificate of exemption (prima facie evidence that the security was exempt), the burden of proof shifted to any person challenging that exemption.
We hold that under the undisputed facts of this case, appellee was not in violation of Chapter 71, and specifically, Section 75-71-31.

II.
May the circuit court entertain and grant a judgment notwithstanding the verdict of guilty in a criminal case?
At the conclusion of the State's evidence, appellee moved for a directed verdict of not guilty which was overruled. The motion was renewed at the conclusion of all the evidence and was overruled. The jury returned a verdict of guilty, and, after discharging the jury, motion for judgment notwithstanding the verdict of guilty was sustained by the court, and appellee was acquitted.
The State contends that a motion for judgment notwithstanding the verdict of guilty is unknown to the criminal law of Mississippi. We find no Mississippi statute dealing with judgment(s) notwithstanding the verdict either in criminal or civil procedure, but it is common knowledge that a motion for judgment notwithstanding the verdict is established practice in the trial of civil cases. At common law, judgment notwithstanding the verdict was inapplicable to criminal cases chiefly for the reason that such judgments were entered on the pleadings and a verdict of acquittal ended the prosecution, even though acquittal was founded on misdirection of the judge. 24 C.J.S. Criminal Law § 1579 (1961).
"A motion for judgment notwithstanding the verdict is but a renewal of a motion for directed verdict or for judgment of acquittal made at the conclusion of the presentation of the evidence at the trial, and its scope is no greater than that of the former motion. Consequently, in passing on a motion for judgment notwithstanding the verdict, the trial court is governed by the same rules as in passing on a motion for a judgment of acquittal. Furthermore, a motion for judgment notwithstanding the verdict of conviction may be allowed only if a motion for directed verdict or for judgment or acquittal should have been allowed at the conclusion of the evidence at the trial." 24 C.J.S. Criminal Law § 1579, at 548 (1961).
In Agregaard v. Duncan, 252 Miss. 454, 173 So.2d 416 (1965), the Court said:
"A judgment notwithstanding the verdict has the same effect as a directed verdict, and the same rules as to the scope of appellate review apply: The subsequent sustaining of a motion notwithstanding the verdict amounts to nothing more than a correction of the court's error in refusing a requested peremptory instruction. The evidence must be treated as proving every fact favorable to the plaintiffs' case which is shown either directly or by reasonable inference." (Emphasis added) 252 Miss. at 457, 173 So.2d at 417.
Judgment notwithstanding the verdict was entered in Grice v. Central Electric Power Ass'n, 230 Miss. 437, 92 So.2d 837 (1957), and the Court stated:

*413 "It is also unnecessary to cite the decisions supporting the well-established rule that in determining whether the defendant is entitled to a directed verdict, the evidence must be treated as proving every fact favorable to the plaintiff's case which is established either directly or by reasonable inference, ... The same rule applies to a motion for a judgment notwithstanding the verdict." (Emphasis added) 230 Miss. at 451, 92 So.2d at 839.
This Court has held that in a civil case the trial court may reassemble the jury, after it has been discharged, for the purpose of returning a proper verdict. [Mississippi Central Railroad Company v. Roberts, 173 Miss. 487, 160 So. 604 (1935); Maclin v. Bloom, 54 Miss. 365 (1877)], and that a trial judge has the authority in a criminal case to reassemble the jury even after it had separated and to direct the jury to reconsider its verdict when satisfied that there had been a palpable mistake. Anderson v. State, 231 Miss. 352, 95 So.2d 465 (1957). It was further held in Jarman v. State, 178 Miss. 103, 172 So. 869 (1936), that it is not necessary in a criminal case to go through the formality of having a jury retire and actually find the verdict directed. The court would enter the judgment as if the jury had returned a verdict of not guilty.
In State v. Thornhill, 251 Miss. 718, 171 So.2d 308 (1965), Desolee Thornhill was tried on an indictment charging her with murder, and after the State rested its case, the defendant moved for a directed verdict of acquittal which motion was overruled. The defendant offered no testimony, the jury was unable to agree and was discharged. The defendant then moved for a directed verdict of acquittal, which was granted by the trial judge, and the State appealed. This Court said:
"We are of the opinion that the trial judge was authorized to sustain a motion and direct a verdict acquitting the defendant and having done so the order of the court protects the defendant from future prosecutions for the crime for which she was acquitted." 251 Miss. at 726, 171 So.2d at 312.
We have held that, in the trial of civil cases on close questions of law and fact, the trial judge should not grant a directed verdict or request for peremptory instruction, but should submit the case to the jury, and, if, after verdict, the judge thinks the directed verdict or peremptory instruction should have been granted, a motion for judgment notwithstanding the verdict could then be sustained. Claiborne v. Greer, 354 So.2d 1109 (Miss. 1978).
It is elementary that a directed verdict, peremptory instruction and judgment notwithstanding the verdict cannot be granted to the State in a criminal case, but we see no sound reason why a motion for judgment notwithstanding a verdict of guilty should not be as applicable in criminal cases as a judgment notwithstanding the verdict in civil cases.
As previously stated, a motion for judgment notwithstanding the verdict is a renewal of the motion for directed verdict after the jury verdict, and the same principle of law applies to it as applies to the motion for directed verdict and request for peremptory instruction.
We, therefore, hold that the filing of a motion for judgment notwithstanding the verdict of guilty and action thereon by a trial judge is a proper procedure in criminal practice in this state.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.